**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LJS&G, LTD., a Nevada Corporation, d/b/a/ LEACH JOHNSON SONG & GRUCHOW, <br><br> Plaintiff, <br> vs. <br><br> Z's, a Nevada Corporation, *et al.*, <br><br> Defendants, <br>_____ <br> UNITED STATES OF AMERICA, <br><br> Cross-Claim Plaintiff, <br> vs. <br><br> LAKE LAS VEGAS MASTER ASSOCIATION, <br><br> Cross-Claim Defendant. | Case No.: 2:16-cv-01150-GMN-DJA <br><br> **ORDER** |

Pending before the Court are the United States of America's (the "Government's") Motion for Default Judgment, (ECF No. 53), and Motion for Disbursement of Funds, (ECF No. 55). No parties filed a response. For the reasons discussed below, the Court **GRANTS** the Government's Motions.

**I.     BACKGROUND**

This case stems from a March 21, 2013 foreclosure on real property located at 31 Rue Mediterra, Henderson, Nevada (the "Property"), which Z's Corporation had owned. (Compl. Interpleader 1:26–3:17, Ex. 1 to Pet. Removal, ECF No. 1-1). The foreclosure occurred due to outstanding fees owed to the homeowners' associations for the Property: South Shore

Residential Community Association ("SSRCA") and Lake Las Vegas Master Association ("LLVMA"). (*Id.* 4:7–11).

At the time of the foreclosure sale, the homeowners' associations were not the only parties with liens on the Property. The Government had filed a Notice of Federal Tax Lien against the Property on January 5, 2010; and other parties may have also had an interest, such as Leasecomm Corporation, Lake Las Vegas Resort Association, the City of Henderson, and Clark County. (*Id.* 1:26–3:17). Accordingly, when $62,325.30 remained in trust after the foreclosure sale, Plaintiff LJS&G, LTD ("Plaintiff") filed a Complaint for Interpleader in the Eighth Judicial District Court for the District of Nevada on January 15, 2016, so that the court could properly adjudicate the various parties' rights to the trust. (*Id.* 4:11–13). After Plaintiff's deduction of $2,852.87 from the trust for its attorney's fees and costs associated with the interpleader proceeding, a final fund amount of $59,472.43 remained in the court's registry ("Interpleaded Funds"). (State Court Pleadings, Ex. 2 to Pet. Removal, ECF No. 1-2).

On May 23, 2016, the Government removed Plaintiff's Complaint for Interpleader to this Court pursuant to 28 U.S.C. § 1442 because it was a civil action against the United States in which the United States may have a right to property. (Pet. Removal 2:1–3:4). On April 24, 2019, the Government filed a Motion requesting the Court's distribution of the Interpleaded Funds in the amount of $59,472.43. (Mot. Disbursement 2:7–5:3, ECF No. 44). The Court denied the Government's Motion for Disbursement of Funds because the Government had not secured, nor moved for, default judgment against the remaining claimants in this case who had not appeared and had not actively litigated their claims (Leasecomm Corporation, Lake Las Vegas Resort Association, and Z's Corporation). (Order, ECF No. 46). The Government then secured Clerk's Entry of Default as to the claimants on September 10, 2019; and filed the instant Motion for Default Judgment alongside its re-filed Motion for Disbursement of the Interpleaded Funds. (Entry of Default, ECF No. 52)

## II. LEGAL STANDARD

"The purpose of interpleader is for a stakeholder to 'protect itself against the problems posed by multiple claimants to a single fund.'" *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010) (quoting *Minn. Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977 (9th Cir. 1999)). An interpleader action general involves a two-stage procedure. (*Id.*). "In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." (*Id.*) (quoting *Rhoades v. Casey*, 196 F.3d 592 (5th Cir. 1999)). "If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants." (*Id.*).

## III. DISCUSSION

### A. Default Judgment

Obtaining a default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Then, after the clerk of court enters default, a party must separately seek entry of default judgment from the court in accordance with Rule 55(b). Fed R. Civ. P. 55(b). Upon entry of a clerk's default, the court takes the factual allegations in the complaint as true. Nonetheless, while the clerk's entry of default is a prerequisite to an entry of default judgment, a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right. *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether to grant a default judgment is in the court's discretion. *Id.* The Ninth Circuit has identified several factors relevant in determining whether to grant default judgment, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

Upon reviewing the documents and pleadings on file in this matter, the Court finds that the *Eitel* factors support entry of default judgment in favor of the Government and against Z's Corporation, Leasecomm Corporation, and Lake Las Vegas Resort Association. Those parties' failure to respond or otherwise appear in a case prejudices the Government's ability to pursue its claims on the merits, and therefore satisfies the first *Eitel* factor. *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No. 2:17-cv-03056-GMN-PAL, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *ME2 Prods., Inc. v. Sanchez*, No. 2:17-cv-667-JCM-NJK, 2018 WL 1763514, at *1 (D. Nev. Apr. 12, 2018).

Regarding the second and third *Eitel* factors, the Court finds that the Government's claim to the Interpleaded Fund is sufficiently pleaded and supported by evidence. Specifically, the Government's Answer asserts a claim to the Interpleaded Fund, alleging that the Government provided "timely notice of and demand for payment" of the federal tax lien assessments made upon Z's as required by 26 U.S.C. § 6308; and Z's failure to pay the outstanding lien. (Answer ¶¶ 25–27, ECF No. 5). The Government then recorded its lien in the Clark County Recorder's Office on January 5, 2010. (*Id.* ¶ 28). Because a federal tax lien is perfected at the time that the tax is assessed and continues in force "until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time," the Government's actions demonstrate the merits of its claims over Z's and other junior lienholders on the property such as Leasecomm and Lake Las Vegas Resort Association. 26 U.S.C. § 6322; *Premier Trust, Inc. v. Duvall*, 559 F. Supp.2d 1109, 1114 (D. Nev. 2008).

The fourth *Eitel* factor is neutral here. *See Standard Ins. Co. v. Asuncion*, 43 F. Supp. 3d 1154, 1157 (W.D. Wash. 2014) (discussing how the fourth *Eitel* factor is generally neutral for interpleader actions).

The fifth *Eitel* factor, which concerns the possibility of a dispute regarding material facts, favors the Government. Courts have recognized that, "[o]nce the clerk enters a default, the well-pleaded factual allegations of the [moving party's] complaint are taken as true, except for those allegations relating to damages." *ME2 Prods.*, 2018 WL 1763514, at *2 (quoting *O'Brien v. United States*, No. 2:07-cv-00986-GMN-GWF, 2010 WL 3636171, at *4 (D. Nev. Sept. 9, 2010)). Here, the Government secured entry of clerk's default against the remaining potential claimants who have neither disclaimed their interest nor appeared in this case. (Entry of Default, ECF No. 52).

With respect to the sixth *Eitel* factor, the Court finds that the claimants who failed to appear were not absent based on excusable neglect. Service on Z's was attempted on April 14, 2016, and further investigation revealed Z's was no longer in business. (Aff. Shannen Tavcar at 35, Ex. to Pet. Removal, ECF No. 1-1). Service on Leasecomm Corporation occurred in April 2016, yet Leasecomm has failed to appear in this action to date. (Summons at 39, Ex. to Pet. Removal, ECF No. 1-1). Similarly, service on Lake Las Vegas Resort Association occurred in April 2016, but the Association has yet to appear. The Clerk of Court thus entered default against Z's, Leasecomm, and Lake Las Vegas Resort Association on September 17, 2019. (Entry of Default, ECF No. 52). Their failure to appear or otherwise file anything with respect to this action during this time period counsels against a finding of excusable neglect. *See ME2 Prods.*, 2018 WL 1763514, at *3; *O'Brien*, 2010 WL 3636171, at *6.

The seventh and final *Eitel* factor concerns public policy considerations. While public policy generally favors disposition on the merits, the Court concludes that default judgment is appropriate in light of the other *Eitel* factors. The Court therefore grants the Government's

Motion for Default Judgment, (ECF No. 53), as to Z's Corporation, Leasecomm Corporation, and Lake Las Vegas Resort Association.

### B. Disbursement of Interpleaded Funds

In light of the Court's grant of default judgment, the Government argues for disbursement of the Interpleaded Funds because "there are no claimants to the interpleaded fund other than the United States." (Mot. Disbursement 5:13–15, ECF No. 55). The only party that actively litigated its interest against the Government was LLVMA, who the Court dismissed on April 23, 2019, after granting a stipulation for dismissal from the parties. (Order, ECF No. 43). The other potential claimants of the City of Henderson and Clark County expressly disclaimed any interest to the interpleaded funds. (Notices of Disclaimer at 49, 51, Ex. B to Pet. Removal, ECF No. 1-1); (Resp., ECF No. 9); (Notice, ECF No. 14); (Order, ECF No. 38) (granting dismissal of Plaintiff).

The Court finds disbursement of the Interpleaded Funds to the Government is appropriate here considering all potential claimants having either disclaimed an interest or defaulted. *See, e.g.*, *Prudential Ins. Co. of Am. v. Iturbide*, No. 8:18-cv-01325-JLS-ADS, 2019 WL 3249620, at *5 (C.D. Cal. Apr. 24, 2019) ("The Court finds such disbursal appropriate because, upon entry of default judgment against Defendant Iturbide, there are no other remaining claimants to the Proceeds."); *see Standard Ins. Co. v. Asuncion*, 43 F. Supp. 3d 1154, 1155 (W.D. Wash. 2014).

Nevertheless, upon review of the docket, the Court's records do not contain a Certificate of Cash Deposit showing that the Interpleaded Funds were actually transferred from the District Court of Clark County to this Court's registry. Instead, the docket shows that the Government only served the Order for Transfer of Monies on Deposit to the Clark County Court, (ECF No. 28), but the Clark County Court has yet to comply with the transfer of funds. Accordingly, the Government must contact the Clerk of the Court for the District Court of Clark County to

ensure the transfer of Interpleaded Funds to this Court. The Government shall have until October 25, 2019, to file proof of the Certificate of Cash Deposit in this Court, or else a joint status report. Upon the filing of a Certificate of Cash Deposit with this Court, the Clerk or Court shall disburse the Interpleaded Funds to the Government.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Government's Motion for Default Judgment, (ECF No. 53), and Motion for Disbursement of Funds, (ECF No. 55), are **GRANTED**.

**IT IS FURTHER ORDERED** that the Government shall contact the Clerk of Court for the District Court of Clark County to ensure the transfer of Interpleaded Funds to this Court.

**IT IS FURTHER ORDERED** that the Government shall have until October 25, 2019, to file a Certificate of Cash Deposit in this Court, or else a joint status report.

**IT IS FURTHER ORDERED** that, upon the Government's filing of a Certificate of Cash Deposition, the Clerk of Court shall disburse the Interpleaded Funds amounting to $59,472.43 to the United States, for application to the unpaid federal tax liabilities of Z's, a Nevada Corporation, in a check made payable to the U.S. Department of Justice, with a notation on check: CMN 2016101092, mailed as follows to:

> U.S. Department of Justice
> Attn: William E. Thompson
> P.O. Box 310
> Ben Franklin Station
> Washington, DC 2004

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this __29__ day of September, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court